CULPEPPER, Judge.
This is a suit for a declaratory judgment to ascertain the method of computation of premiums under a workmen’s compensation and employer’s liability insurance policy. The plaintiff, Mike Hooks, Inc., hereinafter referred to as “Hooks”, is the insured. The defendant, Argonaut-Southwest Insurance Company, is the insurer. Hooks operates dredge boats and tug boats, and it also employs “yard” personnel who work on land. The principal issue is whether the “experience modifications”, a provision for adjustment in the premiums to reflect the insured’s prior loss experience, should be applied to all of Hooks’ operations, including both “land” risks and “over-water” risks. These “experience modifications” are contained in the Experience Rating Plan Manual published by the Southeastern Compensation Rating Bureau, a private agency of which insurers are members and to which they report their losses for each insured in each classification.
Hooks contends the experience modifications should be based on all risks covered by the policy, which would result in a substantial savings in premiums, since its loss experience for land risks was substantially lower than its loss for over-water risks. Argonaut contends the experience modifications have no application to the over-water risks, which would mean that the premiums for these risks would remain the same as stated in the policy, and would not be raised or lowered according to the loss experience. Alternatively, Argonaut contends that if the experience modifications are applied to the over-water risks as well as the land *143 risks, then the experience modifications published by the bureau should be revised, because Hooks’ prior over-water losses were not filed with the bureau by Highlands Insurance Company, Hooks’ prior insurer, and, hence, were not used by the bureau in computing the experience modifiers.
The district judge upheld Hooks’ position and ordered Argonaut to refund to Hooks all excess premiums paid in advance, approximately $118,000, with legal interest from March 1, 1977, the date the premiums became due. Defendant appealed. Plaintiff answered the appeal, seeking interest on the excess premiums under LSA-R.S. 22:637.1, a special statute regarding interest on refunded unearned premiums.
In excellent written reasons, the district judge has correctly stated the facts and applied the law:
“The evidence reflects that sometime pri- or to September 1, 1972, a local agent and an insurance broker for defendant called at the plaintiff’s office and informed its president and the office manager that either Highlands was going to raise its rates or its insurance policies were not going to be renewed. A plan was presented for the same coverage with the defendant, which included a comparison of the rates of the two companies to be computed on a retrospective basis. Although the plaintiff’s representatives-did not recall any particular discussion about experience modifiers, it was understood by all parties that the Argonaut policies were to provide the same coverage and be handled in the same way as the Highlands’ policies. Also, that the premiums would be less if the plaintiff’s loss experience was less than before. The defendant’s representatives had no definite recollection of any discussion of experience modifiers at the 1972 conference. However, the local agent testified that this was discussed by these persons in 1967 and 1970 when the Highlands’ policies were issued. His testimony in this regard was confirmed in part by P-13.
Shortly after the 1972 meeting the plaintiff agreed that the insurance coverage was to be placed with the defendant, and its policy numbered WC-81-290-701402, covering the period from September 1, 1972, to September 1, 1973, (P-1) was issued. It provided both land and over-water coverage, as ^shown on Appendix A attached hereto, and in CONDITION 1 said, “The premium stated in the Declarations is an estimated premium only. Upon termination of this policy, the earned premium shall be computed in accordance with the rules, rates, rating plans, premiums and minimum premiums applicable to this insurance in accordance with the manuals in use by the Company.” Also made a part of the insurance contract and all renewals thereof for a three year period was Endorsement No. 4, entitled “RETROSPECTIVE PREMIUM ENDORSEMENT — THREE YEAR-PLAN D”. (Appendix B)
When the insurance was renewed, the defendant, without notice or explanation to plaintiff, issued two policies for the period September 1, 1973, to September 1, 1974, WC-81-302-701402 (P-2) and WC-81-302-701507 (P-3) which insured the classifications of plaintiff’s operations shown on Appendix C and Appendix D, respectively. Both policies contained an endorsement which provided, “It is agreed that the premium for the policy shall be computed in accordance with the provisions of the Retrospective Premium Endorsement — Plan (D) forming a part of policy WC-81-290-701402”.
For the third year, effective September 1, 1974, to September 1, 1975, two policies were issued, WC-81-314-701402 (P — 4) and WC-81-314-701507 (P-5), which provided coverage for the operations shown on Appendix E and Appendix F, respectively. Each contained an endorsement referring to the Retrospective Premium Endorsement— Plan (D) as quoted above.
Sometime around June, 1974, the plaintiff inquired with defendant as to why the experience modification of .66 had been applied only to the land operations in computing the premiums due under its first policy. It was advised that this resulted from the fact that the bureau had not notified the defendant such promulgation had been de *144 veloped. Apparently, on plaintiff’s insistence that it was entitled to such credit, the defendant issued an indorsement to P-1 raising the rates for over-water coverages, Codes, U.S. 7335 and 7028, in amounts so that when the credit was applied the premiums would be the same as before. (P-10, 11 and Endorsement No. 20, dated July 26, 1974)
Both Highlands and the defendant generally have not followed the practice of reporting and filing water losses of their insureds with the bureau and both companies take the position that water rates are not subject to the experience modification provided in the Experience Rating Plan Manual. Edward R. Soule, assistant manager of the Bureau in New Orleans, seemed to acknowledge that this is ordinarily the case as to strictly maritime losses. However, he testified that the experience modification set forth in the manual applies to a policy as a whole and not to each separate classification of the coverage. If the policy covers both land and water operations the experience modification must be applied to all of the classifications included in the policy. He added that this would not be the case if separate policies were issued, one covering the land operations and the other covering the water operations.
SECTION IV., 2, of the Rating Manual provides:
“PERIOD AND OPERATIONS AFFECTED. The experience modification shall be effective for a period of twelve months (except as provided in Rules 3 and 4 of this Section) and shall apply to all the operations of the risk, regardless of whether the current or any new operations are assigned to the same classifications as were used in establishing such modification.”
(Underscoring by this court)
According to the definitions in Section II, the “risk” is the insured under the policy.
Primarily, the defendant contends that the experience modifications provided by the manual are inapplicable to the premiums for water classification because it and the plaintiff so agreed in their negotiations prior to the issuance of P — 1 in 1972. The evidence does not reflect that the parties even mentioned the application of the experience modification in their discussions concerning the issuance of that policy. The subject was mentioned in 1967 and 1970 in regard to the Highlands’ policies and it was understood that the defendant’s policy was to be handled in the same way as Highlands’. However, there is nothing in this record which establishes that the plaintiff’s representatives were even aware of this factor when they discussed the issuance of the Argonaut policy and its rates in 1972.
In the court’s opinion, Section IV, 2, quoted above requires the application of the experience modification to all of the operations of the insured covered by the policy. The latter, of course, provides that the earned premium shall be computed in accordance with the manuals in use by the company, which includes P — 12. Since the policy covers both land and water classifications, the application of the experience modification is explicit. The court does not believe the evidence presented in this case established that the insured and the insurer clearly and definitely agreed in their negotiations to the inapplicability of the experience modification as to water losses, contrary to the written provisions of the policy that was issued and the manual. Such would be necessary even if the relief sought by the defendant in this respect is construed to be an action to reform the policy. Consequently, the court concludes that the experience modification filed with the bureau must be applied to the water losses in computing the earned premium of the policy, P-1.
Endorsement No. 20 to P-1, increasing the water classifications rates to compensate for the application of the experience modification for the first policy year, is ineffective. Condition No. 1 of P — 1 provides in part as follows:
“This policy is issued by the Company and accepted by the insured with the agreement that if any change in classifications, rates or rating plans is or becomes applicable to this policy under any law regu *145 lating this insurance or because of any amendments affecting the benefits provided by the workmen’s compensation law, such change with the effective date thereof shall be stated in an endorsement issued to form a part of this policy.”
There is nothing in the record which indicates any statutory change in classifications, rates or rating plans or benefits under the workmen’s compensation laws during the effective date of the policy. Consequently, the defendant was not entitled to unilaterally change the rates for the water classifications through the issuance of such endorsement.
In regard to a renewal of an insurance policy it was said in Crowell v. New Hampshire Fire Ins. Co., 147 So. 762 (La.App. 2 Cir. 1933):
“When the insurance agency issued the contract on June 17, 1930, it was legally bound to issue a policy containing the same terms and conditions as the original policy. By the renewal or extension, unless there is a special agreement for different terms, the original policy is continued under the original stipulations, and the only change is in the time of its expiration. Under such circumstances, if there is a change in the conditions or terms of the policy, it is the duty of the insurer to call attention to the change, otherwise the change can be no part of the contract, and the renewal contract is subject to reformation by the courts of equity to make it conform to the original contract, unless there has been an amendment of the contract by enactment of a statute by the Legislature.” (Page 766)
No explanation was given by the defendant to the plaintiff for the issuance of two separate policies to cover the classifications included in P-1 or of any change in the computation of the premiums. All four of the renewal policies (P-2, P-3, P-4 and P-5) contained an endorsement that their premiums were to be computed in accordance with the Three Year Retrospective Plan (D) that formed a part of P — 1. Under the circumstances, the court concludes that the appropriate experience modifications must be applied to the water losses for these policies as well as the other.
The defendant’s alternative plea must also be denied. As pointed out herein-above, the policies state that the premiums shall be computed in accordance with the rating manual. It provides for the filing of losses with the bureau and computation by that organization of the experience modifications which are to be applied to the premiums for the whole policy. This was accomplished before the policies involved in this suit were issued, and the modifiers, as well as the manner in which they were computed by the bureau, were available for defendant’s inspection. The latter has taken no action to revise the losses and change the experience ratings in accordance with the manual. Since the computation and promulgation of the experience modifications are strictly a function of the bureau, the court concludes that such modifications for the respective annual periods covered by the policies involved in this suit as promulgated by the bureau must be applied in this instance.”
On appeal, Argonaut re-urges its position that during negotiations prior to the issuance of its policy it was never intended that the experience modifiers would apply to Hooks’ high risk dredging and tugboat operations, since these maritime risks are not regulated by any statutory rate and are usually determined by negotiation between the parties. Argonaut contends that Hooks is trying to take advantage of two “mistakes”, the first being that Highlands failed to send to the bureau the record of Hooks’ losses in dredging and tugboat operations during the years preceding the issuance of the Argonaut policy, and the second being that for the 1972-1973 policy year, Argonaut issued a single policy covering all water and land risks, rather than dividing the maritime risks and the land risks into two separate policies, as it should have. Argonaut argues that to allow Hooks to take advantage of these two technical “mistakes” would result in an unjust enrichment to Hooks in the sum of approximately $118,-335.
*146 Defendant did not argue unjust enrichment in the trial court. Nevertheless, we find the contention without merit. We agree with the trial judge that the policy, as written, is clear and free of ambiguity. The experience modifications apply to all risks covered by the policy. In effect, Argonaut is asking the court to rewrite the policy, although it has not expressly sought to reform the contract. As the trial judge aptly stated in his written reasons, even if Argonaut were seeking to reform the policy, the evidence does not show that during negotiations prior to its issuance the parties clearly and definitely agreed that the experience modifications would not apply to the over-water risks.
By answer to the appeal, Hooks asserts that it is entitled to recover interest on the excess premiums paid Argonaut, under the provisions of LSA-R.S. 22:637.1 which provides:
“A. Any refund due an insured by an insurer writing or delivering insurance policies excluding health and life insurance, in the state because of either cancellation, elimination, or reduction of coverage by the insurer or the insured, shall be accompanied with interest at the rate of one and one-half percent per month of the amount of the refund due the customer, .. . .”
This statute provides interest only when the coverage of the policy has been decreased, and as a result the insured is entitled to a refund. In the present case, there has been no change in the coverage provided to Hooks. This refund results from an improper computation of premiums, not a cancellation, elimination or reduction of coverage. Consequently, plaintiff’s request for additional interest is denied.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.